# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA HOSKINS, #R-54570, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 16−cv−01232−MJR ) ) |
| SPILLER, WILLIAM SPILLER, SHAUN GEE, M. HUDSON, F. EOVALADI, R. ALLEN, B. GUTREUTER, A. LANG, CORY BUMP, C. FREIDRICH, HARTMAN, GRACIN,[1] J. CARTER, K. BROOKMAN, SARAH WOOLEY, R. ENGELAGE, and MR. WARD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Joshua Hoskins, an inmate at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. (Doc. 20). In it, Plaintiff describes a campaign of retaliation against him at Menard

---

[1] Plaintiff filed a Motion to Correct Defendant Name (Doc. 27), in which he asks the Court to substitute "Nurse L. Gregson" in place of "Gracin." His motion is GRANTED. The Clerk shall be directed to replace Gracin with Nurse L. Gregson as a defendant on the docketing sheet in CM/ECF. The Court will refer to this defendant as "Nurse L. Gregson" in the screening order.

1

that culminated in his assault by Officer Spiller on June 10, 2016, and his subsequent denial of medical care and mental health treatment. (Doc. 20, pp. 24-34). The allegations in the First Amended Complaint give rise to claims against the defendants under the First, Eighth, and/or Fourteenth Amendments. *Id*. In connection with these claims, Plaintiff seeks monetary damages. (Doc. 20, p. 35). He also seeks a permanent transfer from Menard.[2] *Id*.

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line

---

[2] Plaintiff is not currently housed at Menard. (Doc. 28). During much of the pending case, he has been temporarily housed at Stateville Correctional Center ("Stateville") and more recently at Pontiac Correctional Center ("Pontiac"). (*See* Docs. 11, 13, 14, 18, 28, 29). Pursuant to an order entered by this Court in a related case on March 10, 2017, the Illinois Department of Corrections Director, John Baldwin, was required to transfer Plaintiff from Menard no later than March 24, 2017. *See Hoskins v. Dilday*, No. 16-cv-00334-MJR-SCW (S.D. Ill. 2016) (Doc. 105). Should his situation change, necessitating a temporary restraining order or preliminary injunction in this case, he may file a separate motion seeking this relief under Rule 65 of the Federal Rules of Civil Procedure.

between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the First Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal. The First Amended Complaint otherwise survives preliminary review.

## **Background**

Plaintiff's claims in this case are related to claims that are now pending before this Court in two cases he filed on March 28, 2016, *i.e.*, *Hoskins v. Dilday*, No. 16-cv-00334-MJR-SCW (S.D. Ill. filed Mar. 28, 2016) ("lead case") and *Hoskins v. Dilday*, No. 16-cv-00335-MJR-SCW (S.D. Ill. filed Mar. 28, 2016) ("consolidated case"). In fact, his two prior cases are so closely related to one another that this Court consolidated them on April 11, 2016. (Doc. 7, lead case; Doc. 8, consolidated case). Plaintiff subsequently filed several motions seeking leave to amend his complaints. (Docs. 8, 11, 15, lead case). This Court ultimately allowed him to proceed with the claims set forth in his second amended complaint. (Doc. 23, lead case). However, in the screening order entered on July 28, 2016, this Court warned Plaintiff that adding any more "claims or parties . . . may lead to severance, dismissal, or additional fees." (Doc. 22, n. 1, lead case).

Within months, Plaintiff filed the instant action in the United States District Court for the Central District of Illinois on October 24, 2016. (Doc. 1). He named twelve of the twenty defendants from his consolidated cases as defendants in this action, as well as five others, for violations of his constitutional rights at Menard in 2016. *Id*. The claims in both cases arise from

assaults on Plaintiff in 2016. On November 8, 2016, the Central District transferred the case to this District. (Doc. 9). At the time the case was transferred, a Motion for Leave to File Amended Complaint was pending. (Doc. 7). Plaintiff subsequently filed a Second Motion for Leave to File Amended Complaint, which this Court granted on January 11, 2017. (Docs. 17, 19). The First Amended Complaint is now subject to screening.

## First Amended Complaint

Plaintiff alleges that he was assaulted by a member of Menard's staff on June 10, 2016. (Doc. 20, pp. 24-34). The assault was orchestrated by officials at Menard who were either upset with Plaintiff for his involvement in a staff assault in 2013 or were retaliating against him for filing grievances in 2016. *Id*. He names seventeen prison officials in connection with the planned attack and the denial of medical care and mental health treatment in its wake. *Id*.

Plaintiff learned of the planned attack on March 25, 2016, when Sergeant William Spiller approached Plaintiff in his cell in Menard's North 2 Cell House and indicated that his brother, Officer Spiller, worked in the same cell house. (Doc. 20, p. 24). Sergeant Spiller warned Plaintiff that several prison officials, including Sergeant Spiller, Wooley, Allen, Bump, Gutreuter, Eovaladi, Ward, Hudson, and "others," were planning to have Officer Spiller attack him "unexpectedly." *Id*.

On May 19, 2016, Allen then stopped Plaintiff as he was walking past the South Cell House and warned him that he "had a lot of more beatings coming from their staffs in the future." (Doc. 20, p. 24). Allen told Plaintiff of his plans to have Officer Spiller attack Plaintiff. Ward added that "they" were going to make sure the officer was not disciplined for the attack on Plaintiff. *Id*. Further, Ward said that Sergeant Spiller, Officer Spiller, Eovaladi, and "other

4

staffs" had already put the medical technicians (A. Lang, Engelage, and Stephanie,[3] among others) on notice of these plans and instructed them to deny Plaintiff medical treatment for his injuries after the attack. *Id.* They were also told not to document any injuries. *Id*. Wooley explained that the attack was planned because Plaintiff pushed an unidentified "IDOC officer" on February 19, 2013. *Id*. Ward indicated that Menard officials learned of the incident when reviewing his disciplinary history record. *Id*.

On May 22, 2016, Hudson stopped Plaintiff in the North 2 Cell House and threatened to "assault [him] again" by having other staff members carry out the attack for him. (Doc. 20, p. 24). He said, "[Y]ou gonna be seeing . . . [O]fficer Spiller real soon." *Id*. Hudson indicated that he, Eovaladi, and "others" were planning to have Officer Spiller attack Plaintiff while he was working on that gallery. *Id*. Hudson admitted planning the attack in retaliation against Plaintiff for reporting him to internal affairs earlier that year. *Id*.

On June 3, 2016, Sergeant Spiller returned to Plaintiff's cell in Menard's North 2 Cell House. (Doc. 20, p. 25). He said that he was aware of the statements made by Allen, Wooley, Ward, and Hudson. *Id*. Sergeant Spiller said that he intended to have "someone special to him" assault Plaintiff. *Id*. Sergeant Spiller made this statement in response to Plaintiff's comment that he had "matters" pending against him in federal court. *Id*.

On June 10, 2016, Officer Spiller was assigned to work the 8 Gallery in Menard's North 2 Cell House where Plaintiff was housed. (Doc. 20, p. 25). The officer approached Plaintiff in his cell, placed him in cuffs, and twisted both of his wrists. *Id*. He then removed Plaintiff from the cell and escorted him to the visiting room cage area. *Id*. On the way, Officer Spiller continued twisting Plaintiff's cuffs, which tore his skin and caused his wrists to bleed. *Id*. At the

---

[3] Stephanie is referred to in the statement of claim but is not named as a defendant in this action. (Doc. 20, p. 24). Any claims against this individual are considered dismissed without prejudice.

same time, Officer Spiller asked, "[H]ow do[es] that feel, bitch?" *Id*. Once in the holding area, Officer Spiller pushed Plaintiff onto the floor very hard, causing him to hit his forehead on a brick wall and to suffer serious abrasions and swelling. *Id*. The officer then punched Plaintiff in the chest and stomach twice. *Id*.

At the same time, Officer Spiller demanded to know if Plaintiff had a "complaint against [his] love[d] one." (Doc. 20, p. 25). The officer told Plaintiff that he intended to give him a reason for filing his complaint. (Doc. 20, p. 26). Officer Spiller added that he was not worried about being disciplined because Sergeant Spiller worked in internal affairs and planned the attack with his "buddies," Wooley, Gee, Ward, and "others." *Id*. According to Officer Spiller, Wooley, Ward, Gee, Eovaladi, Hudson, Gutreuter, Allen, Hudson, Carter, and "others" had him personally assigned to the gallery to beat up Plaintiff. *Id*. Officer Spiller also told Plaintiff that prison officials would not respond to his grievances. *Id*.

Later the same day, Nurse Gregson spoke with Plaintiff while making rounds to pass out psychotropic medications. (Doc. 20, p. 26). Plaintiff complained of injuries to his forehead and chest, including swelling and bruising, that resulted from Officer Spiller's attack on Plaintiff earlier that day. *Id*. Plaintiff requested ice packs and pain relievers. *Id*. The nurse refused to treat Plaintiff, after explaining that Medical Technicians Lang, Engelage, Freidrich, "others," and Eovaladi instructed the nurse not to provide Plaintiff "with shit." *Id*. The nurse explained that this was in return for grievances Plaintiff filed in the past to complain about a mental health professional, D. Franklin,[4] and because of the pushing incident in his disciplinary record. (Doc. 20, pp. 26-27). The nurse told Plaintiff that he was "screwed." (Doc. 20, p. 27).

---

[4] Franklin is not named as a defendant in this action. Any claims against this individual are considered dismissed without prejudice.

On June 11, 2016, Engelage made medication rounds to Plaintiff's cell. *Id*. When he showed her his injuries, she said that "she didn't give a fuck." *Id*. She denied him all medical treatment, including his psychotropic medications. *Id*. She went on to explain that she already knew about his injuries because she discussed them with Officer Spiller, Eovaladi, Allen, Ward, Wooley, Gutreuter, Hudson and "other staffs." *Id*. They asked her not to document the injuries or provide Plaintiff with any medical care. *Id*. For that reason, Plaintiff should expect nothing. *Id*.

On June 14, 2016, Hartman refused to let Plaintiff speak with a psychiatrist. (Doc. 20, p. 27). He acknowledged Plaintiff's assault by Officer Spiller and his injuries, including the knot on his head. *Id*. He admitted hearing Officer Spiller, Gutreuter, Eovaladi, Allen, Spiller, Wooley, Carter, and others discuss it. (Doc. 20, pp. 27-28). In fact, he was riding with Officer Spiller on the day of the assault and knew it was going to occur. (Doc. 20, p. 28). Hartman also said that Officer Spiller, Eovaladi, Wooley, Bump, and "others" told him that Plaintiff was not allowed to speak with any medical or mental health provider. (Doc. 20, p. 27). Hartman was also prohibited from documenting the injuries. *Id*.

On June 18, 2016, Ward observed Plaintiff standing in his cell and commented on the fact that Plaintiff must have thought he was joking when he warned Plaintiff about the planned attack on him. (Doc. 20, p. 29). Ward indicated that Officer Spiller was supposed to "fuck [him] up bad," but he failed to do so. *Id*. Ward, Wooley, Eovaladi, and Allen wanted him to inflict more harm. *Id*. He then warned Plaintiff that the officers were monitoring his outgoing mail to make sure he could not file a grievance to complain about the incident. *Id*.

On June 23, 2016, Plaintiff finally had an opportunity to speak with a mental health professional, Ms. Creason.[5] (Doc. 20, p. 28). As soon as Officer Spiller, Hartman, and Gee observed the interaction, they put an end to it. *Id*. They instructing Creason not to speak with Plaintiff or let him speak with any other mental health or medical professional. *Id*. They said that the order came from Sergeant Spiller and Bump. *Id*.

Sergeant Spiller later spoke with Plaintiff at his cell. (Doc. 20, p. 29). He admitted knowing about every detail of the assault. *Id*. He explained that the officers knew of Plaintiff's complaints about prison staff that dated back to an assault on him in February 2016. *Id*. Sergeant Spiller indicated that they were still monitoring Plaintiff's outgoing mail and would intercept and "burn" any grievances or appeals related to prison guard attacks on him. *Id*.

On July 7, 2016, Plaintiff encountered Brookman in the visiting room. (Doc. 20, p. 31). Brookman told Plaintiff that he had reviewed more than a thousand kites that Plaintiff sent to Carter to complain about Officer Spiller's assault on him in June. *Id*. Brookman indicated that Carter was also aware of what occurred. *Id*. In fact, both Brookman and Carter knew about the planned assault before it happened and could have stopped it. *Id*. However, they declined to do so because Plaintiff deserved to be attacked. *Id*.

On July 10, 2016, Aimee Lang passed by Plaintiff's cell. (Doc. 20, p. 30). When she saw Plaintiff, Lang stopped and acknowledged receipt of Plaintiff's numerous requests for medical treatment since the date of his assault. *Id*. She said that he should have gathered from her silence that no medical treatment would be provided for his wrist, head, chest, or stomach injuries. *Id*. His sick call slips were destroyed. *Id*.

---

[5] Creason is not named as a defendant in this action, and all claims against this individual are considered dismissed without prejudice.

8

On July 15, 2016, Sergeant Spiller spit in Plaintiff's face as he sat on the floor of his cell. (Doc. 20, p. 30). Sergeant Spiller explained that he was aware of Plaintiff's numerous sick call slips and complaints that documented the assault by Officer Spiller on June 10, 2016. *Id*. He warned Plaintiff to stop filing them, or he would instruct Officer Spiller to inflict more harm. *Id*.

On July 16, 2016, Engelage visited Plaintiff at his cell and repeated what Sergeant Spiller told Plaintiff the day before. (Doc. 20, p. 30). He called Plaintiff a "fucking dum[b] ass" for thinking that he would receive medical treatment after the June assault, given that he did not receive it after an assault that occurred earlier that year. *Id*. Engelage discouraged Plaintiff from filing any additional sick call slips, stating that they would only be destroyed by staff. *Id*.

Later the same day, Bump walked by Plaintiff's cell and spit on his chest. (Doc. 20, p. 30). The officer told Plaintiff to stop filing sick call slips. *Id*. He warned Plaintiff that if he heard of any more medical complaints stemming from the assault by Officer Spiller, then he, Eovaladi, and "other staffs" would "beat the hell out of [Plaintiff]." (Doc. 20, pp. 30-31).

On July 18, 2016, Gee informed Plaintiff that any written complaints he addressed to the institution's chief investigator would be reviewed by "any and all officers assigned to the investigation units." (Doc. 20, p. 31). He ordered Plaintiff to "quit sending fucking kites to their investigation units requesting that Officer Spiller be disciplined for assaulting [Plaintiff]." *Id*. He also discouraged Plaintiff from complaining about the denial of medical treatment for his injuries. *Id*.

On July 20, 2016, Hudson spoke with Plaintiff. (Doc. 20, p. 32). He said that Plaintiff would be beaten again, if he submitted another kite complaining about the June assault by Officer Spiller. *Id*. In the event he did so, Hudson threatened to personally beat him along with other officers. *Id*. He warned Plaintiff that he would get away with "victimizing" Plaintiff. *Id*.

9

On August 11, 2016, Gutreuter called Plaintiff a "dum[b] fuck" for sending complaints to the internal affairs unit. (Doc. 20, p. 32). He explained that Sergeant Spiller is Officer Spiller's brother and also works for internal affairs. *Id*. Moreover, it was internal affairs officers, including Sergeant Spiller, Gutreuter, Eovaladi, Wooley, and "others," that organized the attack on Plaintiff. *Id*. They made sure Officer Spiller was assigned to Plaintiff's gallery "just to fuck [him] up." *Id*. Further, they instructed medical staff to deny Plaintiff treatment for his injuries. *Id*.

On September 14, 2016, Eovaladi approached Plaintiff while he was speaking with a mental health professional. (Doc. 20, p. 32). Eovaladi told Plaintiff that he hoped he was not surprised by Officer Spiller's assault of him on June 10, 2016. *Id*. After all, Eovaladi warned him earlier that year that he had "more beatens coming" from staff. *Id*. Eovaladi then admitted to intercepting "most" of Plaintiff's sick call slips and destroying them so that he could not obtain medical care after the assault. (Doc. 20, pp. 32-33). He said that he never liked Plaintiff after learning of his involvement in the February 2013 staff assault. (Doc. 20, p. 33).

Later the same day, Freidrich approached Plaintiff and said that he hoped Plaintiff realized "months ago" that he would not be receiving medical care for the injuries he sustained during the assault in June. (Doc. 20, p. 33). He told Plaintiff that all of the sick call slips he filed would never be found. *Id*. Further, he stopped caring about Plaintiff's safety as soon as he learned that Plaintiff assault a prison official in 2013. *Id*.

On October 3, 2016, Wooley spoke to Plaintiff as he passed by her, asking him why he ever thought Officer Spiller would be disciplined for his actions when the assault was planned by prison staff. (Doc. 20, p. 34). She admitted that prison officials intercepted grievances he

directed to Warden Butler and internal affairs and destroyed them. *Id*. They also destroyed his sick call slips during the month after the assault. *Id*.

On October 17, 2016, Carter visited Plaintiff at his cell. (Doc. 20, p. 33). He told Plaintiff to stop filing kites expressing fear for his safety because Carter "don't give a fuck." *Id*. If he cared, Carter said that he would have prevented Officer Spiller from assaulting him in the first place. *Id*. He also could have ensured that Plaintiff received medical care following the assault. *Id*. Carter explained that he simply had "no sympathy" for Plaintiff because he assaulted a staff member in 2013. *Id*. Sometime in August, September, or October, Allen approached Plaintiff and expressed the same sentiments as Carter and Freidrich. (Doc. 20, p. 34).

Plaintiff alleges that he spent more than a month suffering from his injuries following the assault. (Doc. 20, p. 34). These injuries included a bruised forehead, headaches, dizziness, chest pains, stomach pains, poor vision, memory loss, forehead pain, sleeplessness, difficulty focusing, poor comprehension, depression, and anxiety, among other things. *Id*. He has been unable to address these issues because prison officials have decided to "turn a blind eye" to his complaints. *Id*.

Plaintiff now seeks compensatory damages in the amount of $28,000.00 and punitive damages in the amount of $18,999.00 against the defendants. (Doc. 20, p. 35). He also seeks injunctive relief in the form of an order permanently transferring him from Menard. *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* First Amended Complaint

into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1** – First Amendment claim of retaliation for filing grievances in 2016 and for pushing a correctional officer in 2013.
>
> **Count 2** – Eighth Amendment failure to protect claim against Defendants for failing to prevent Officer Spiller's assault on Plaintiff on June 10, 2016.
>
> **Count 3** – Eighth Amendment excessive force claim against Officer Spiller for assaulting Plaintiff on June 10, 2016.
>
> **Count 4** – Eighth Amendment deliberate indifference to serious medical needs claim against Defendants for denying Plaintiff medical care and/or mental health treatment after the assault that occurred on June 10, 2016.
>
> **Count 5** – Fourteenth Amendment claim against Defendants for intercepting or otherwise impeding Plaintiff's ability to file grievances regarding his June 2016 beating.
>
> **Count 6** – Conspiracy claim against Defendants for organizing or agreeing to allow Officer Spiller to assault Plaintiff on June 10, 2016, and for then denying him medical care and/or mental health treatment and access to grievances.

As discussed in more detail below, Counts 1, 2, 3, 4, and 6 survive screening and shall proceed against those defendants who are identified below in connection with each claim. Count 5 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 1

To state a First Amendment retaliation claim, a prisoner must demonstrate that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) there was a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff claims that the defendants retaliated against him for two reasons. First, they were upset by his decision to file a lawsuit against some of them

12

and grievances against others in 2016. Second, they learned of his involvement in a staff assault in February 2013.

Filing a non-frivolous lawsuit or grievance against a prison official qualifies as constitutionally protected activity that supports a retaliation claim. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citing *Thomas v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004)). The First Amendment "creates a right to 'petition the Government [which by interpretation of the due process clause of the Fourteenth Amendment has been held to include state and local governments] for a redress of grievances." *Ogurek v. Gabor*, 827 F.3d 567 (7th Cir. 2016). Prison officials may not retaliate against prisoners for filing grievances or otherwise complaining about the conditions of their confinement. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In light of controlling precedent, Plaintiff's decision to file a non-frivolous suit and/or grievances in 2016 constitutes protected conduct that supports a retaliation claim.

In contrast, the pushing incident in February 2013 is not protected conduct and therefore does not support a retaliation claim. "[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[P]rotected activity" under the First Amendment does not include assault or battery against an officer); *McElroy v. Unknown Parties*, No. 14-cv-01020, 2014 WL 5396172, at *2 (S.D. Ill. Oct. 21, 2014) (dismissing claim because "restraining guard" and "physical assault" are not activities "protected under the First Amendment").

Plaintiff shall be allowed to proceed with his retaliation claim in Count 1 against all of the defendants at this time. However, the retaliation claim is limited to acts of retaliation taken

against Plaintiff for filing a suit and/or grievances at Menard in 2016. No retaliation claim shall proceed against these defendants based on the pushing incident that occurred in 2013.

**Count 2**

To state an Eighth Amendment failure-to-protect claim, a prisoner must allege facts suggesting that he faced a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Wilson v. Ryker*, 451 F. App'x 588, *1 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)). A generalized risk of violence will not support a claim under the Eighth Amendment because prisons are inherently dangerous. *Wilson*, 451 F. App'x at *1 (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)). Plaintiff must instead allege a tangible threat to his well-being. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (*Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (noting a distinction between actual and feared exposure)). "[I]t is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) (quoting *Babcock*, 102 F.3d at 272).

The allegations in the First Amended Complaint suggest that the following defendants were aware of a tangible threat to Plaintiff's safety posed by the planned attack on June 10, 2016, but failed to take steps to stop it: Sergeant Spiller, Gee, Hudson, Eovaladi, Allen, Gutreuter, Bump, Freidrich, Hartman, Carter, Brookman, Wooley, and Ward. Count 2 shall proceed against these defendants. This claim shall be dismissed without prejudice against all other defendants because the allegations do not suggest that they knew of a tangible threat to Plaintiff's safety prior to June 10, 2016, and failed to take steps to intervene and stop the attack: Officer Spiller

(who is subject to Count 3), Lang, Gregson, and Engelage. Count 2 shall be dismissed without prejudice against them.

**Count 3**

The intentional use of excessive force by prison guards against a prisoner without penological justification gives rise to an Eighth Amendment claim for cruel and unusual punishment. *Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). To state an Eighth Amendment excessive force claim, a prisoner must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

The allegations in the First Amended Complaint suggest that Officer Spiller may have used excessive force against Plaintiff on June 10, 2016. The officer allegedly twisted Plaintiff's handcuffs so tightly that he bled. (Doc. 20, pp. 24-34). Officer Spiller then pushed Plaintiff down and caused him to sustain a head injury before punching him in the chest and stomach. *Id*. There is no suggestion that Plaintiff provoked the beating. *Id*.

Accordingly, Count 3 shall receive further review against Officer Spiller. This claim shall be dismissed with prejudice against all other defendants because no one else is named in connection with the June 2016 assault on Plaintiff or any other use of excessive force against him. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[I]ndividual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue.").

**Count 4**

To establish a violation of the Eighth Amendment right to receive medical care, a prisoner must demonstrate that he suffered from an objectively serious medical need and the defendants responded to it with deliberate indifference. *Caffey v. Maue*, -- F. App'x --, 2017 WL 659349 (7th Cir. 2017) (citing *Farmer*, 511 U.S. at 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). The numerous untreated injuries that Plaintiff describes, including a bruised forehead, headaches, dizziness, chest pains, stomach pains, poor vision, memory loss, forehead pain, sleeplessness, difficulty focusing, poor comprehension, depression, and anxiety, suggest that he suffered from a serious medical need. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (noting that pain alone can be an objectively serious medical condition); *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) (same). Further, the allegations indicate that the following defendants were aware of Plaintiff's medical needs and denied him access to medical care and mental health treatment after the June beating: Officer Spiller, Sergeant Spiller, Gee, Hudson, Eovaladi, Allen, Gutreuter, Lang, Bump, Freidrich, Hartman, Gregson, Carter, Wooley, Engelage, and Ward. Count 4 shall proceed against these defendants for exhibiting deliberate indifference to Plaintiff's serious medical and/or mental health needs.

This claim is subject to dismissal against Hartman. The allegations do not suggest that he was personally involved in the denial of Plaintiff's medical care or mental health treatment. *See Palmer v. Marion County*, 327 F.3d at 594. Accordingly, Count 4 shall be dismissed without prejudice against this defendant.

**Count 5**

Grievance procedures are not constitutionally mandated. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Therefore, the failure of prison officials to follow a prison's grievance procedures does not give rise to a Fourteenth Amendment due process claim. *Id*. Any right to a

16

grievance procedure is a procedural right and thus not implicated under the Due Process Clause. *Grieveson*, 538 F.3d at 772. As such, the alleged mishandling of grievances by individuals who otherwise did not participate in the underlying conduct states no claim. *Owens*, 635 F.3d at 953.

Count 5 cannot proceed against any of the defendants and shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. However, the dismissal of this claim does not leave Plaintiff without recourse. The conduct giving rise to it (*i.e.*, the defendants' use of excessive force against him, failure to protect him, and denial of adequate medical care) supports claims against the defendants under Counts 1, 2, 3, 4, and 6.

## Count 6

A civil conspiracy claim is cognizable under § 1983. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (recognizing a conspiracy claim under § 1983). It is enough in pleading a conspiracy to indicate the parties, the general purpose, and the approximate date of the conspiracy. *Id*. at 1007. The allegations in the First Amended Complaint suggest that the defendants reached an agreement regarding the June beating and the subsequent denial of medical care and mental health treatment. (Doc. 20, pp. 24-34). Accordingly, the conspiracy claim in Count 6 survives screening against all of the defendants.

## Pending Motions

Plaintiff's Motion to Correct Defendant Name (Doc. 27) is **GRANTED**.

Plaintiff's Motion for Appointment of Counsel (Doc. 28) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

## Disposition

The Clerk is **DIRECTED** to replace "Gracin" with "**NURSE L. GREGSON**" as a defendant on the docketing sheet in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 5** is **DISMISSED** with prejudice against all Defendants for failure to state a claim upon which relief may be granted.

**COUNTS 1** and **6** will proceed against **ALL NAMED DEFENDANTS.**

**COUNT 2** will proceed against Defendants **WILLIAM SPILLER, GEE, HUDSON, EOVALADI, ALLEN, GUTREUTER, BUMP, FREIDRICH, HARTMAN, CARTER, BROOKMAN, WOOLEY,** and **WARD**. This claim is **DISMISSED** without prejudice against Defendants **OFFICER SPILLER (#7356), LANG, GREGSON,** and **ENGELAGE** for failure to state a claim upon which relief may be granted.

**COUNT 3** will proceed against Defendant **OFFICER SPILLER (#7356).** This claim is **DISMISSED** with prejudice against all remaining defendants for failure to state a claim upon which relief may be granted.

**COUNT 4** will proceed against Defendants **OFFICER SPILLER (#7356), WILLIAM SPILLER, GEE, HUDSON, EOVALADI, ALLEN, GUTREUTER, LANG, BUMP, FREIDRICH, HARTMAN, GREGSON, CARTER, WOOLEY, ENGELAGE,** and **WARD**. This claim is **DISMISSED** without prejudice against Defendant **BROOKMAN** for failure to state a claim upon which relief may be granted.

With regard to **COUNTS 1-4** and **6**, the Clerk shall prepare for **ALL NAMED DEFENDANTS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 20), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that

Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 20) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Appointment of Counsel (Doc. 28), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties*

*consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: April 13, 2017**

<u>s/ MICHAEL J. REAGAN</u>
**U.S. Chief District Judge**