IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSHUA HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SPILLER, OFFICER #7356, | ) | Case No. 16–cv–1232–MJR–SCW |
| WILLIAM SPILLER, | ) | |
| SHAUN GEE, | ) | |
| M. HUDSON, | ) | |
| F. EOVALADI, | ) | |
| R. ALLEN, | ) | |
| B. GUTREUTER, | ) | |
| A. LANG, | ) | |
| CORY BUMP, | ) | |
| C. FREIDRICH, | ) | |
| HARTMAN, | ) | |
| NURSE L. GREGSON, | ) | |
| J. CARTER, | ) | |
| K. BROOKMAN, | ) | |
| SARAH WOOLEY, | ) | |
| R. ENGELAGE, | ) | |
| MR. WARD, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM & ORDER**

**REAGAN, Chief District Judge:**

This matter is now before the Court on a Report and Recommendation ("R&R") submitted by Magistrate Judge Stephen C. Williams, recommending that this Court grant summary judgment in favor of all Defendants (Doc. 91). The underlying case is a Section 1983 civil rights suit against the Defendants regarding an alleged beating of

Plaintiff and a subsequent lack of medical care at Menard Correctional Center ("Menard"). Magistrate Judge Williams conducted an evidentiary hearing prior to issuing his R&R to assess the weight and credibility of the evidence regarding Plaintiff's exhaustion of administrative remedies (Doc. 89). In the R&R, Magistrate Judge Williams found that Plaintiff was not credible, and that Plaintiff failed to exhaust his administrative remedies (Doc. 91). Plaintiff filed a timely objection to the R&R (Doc. 94), and Defendants responded (Doc. 98). The R&R and Plaintiff's objection are now before the Court for consideration.

For the reasons explained below, the undersigned overrules Plaintiff's objections, adopts in full Judge Williams' R&R, and grants summary judgment to all Defendants.

**PROCEDURAL & FACTUAL BACKGROUND**

Plaintiff alleges that on June 10, 2016, he sustained multiple injuries when Westley Spiller (a guard at Menard) physically attacked him (Doc. 1 at 24-26). In the months and days leading up to the attack, Plaintiff alleged that numerous other prison employees made him aware that an attack by Spiller #7356 was imminent (Doc. 1 at 22-24). After the attack took place, Plaintiff was refused medical care on multiple occasions by numerous individuals (*Id.* at 24-33). Plaintiff also alleged that he was denied psychotropic medications and that he was not allowed to speak with mental health staff (*Id.*). Each time that he was refused care, the individual refusing him help made snide remarks about how all staff were in agreement not to help him and

suggesting that Spiller's beating was not wrong or would go unpunished (*Id.*). The complaint suggests that Plaintiff submitted kites to prison individuals about his injuries. However, the complaint also suggests that prison staff told Plaintiff any complaints he lodged about his beating would go unanswered (*Id.*). Plaintiff did not append any exhibits to his complaint, though he did note in his complaint that he was barred from using the grievance system at Menard (Doc. 1 at 22).

In support of their assertion that Plaintiff failed to exhaust administrative remedies, Defendants supplied the Court with testimony, as well as more than one-hundred pages of grievances filed by Plaintiff (Docs. 89, 90). None of the grievances specifically reference the June 10, 2016 beating (Doc. 90). Live testimony was provided by Justin Dilday, Frank Eovaldi, Bruce Gutreuter, William Spiller, Jason Vasquez, and Plaintiff. Vasquez testified that he was Plaintiff's counselor (Doc. 91 at 12). As part of his duty, he conducts face-to-face meetings with inmates every 30 days, at which time they can ask him for a grievance slip or hand him a completed grievance (*Id.* at 12-15). Plaintiff never suggested to Vasquez that he had a grievance about a June beating, or that he was being prevented from accessing the grievance system (*Id.*).

Plaintiff also testified at the evidentiary hearing. He claimed that he did speak with Vasquez about the June attack, but that Vasquez said he would not do anything about it (Doc. 91 at 16). He also alleged that there were no boxes to collect grievances in his cell house, so the only way to submit a grievance would be to have an officer pick it

up (*Id.* at 15-16). Plaintiff alleged that he feared filing a grievance or ARB document about the June beating because he would be retaliated against (*Id.* at 16-17). However, he did not have the same fear about filing a public lawsuit (*Id.* at 17). Plaintiff acknowledged that he submitted grievances from February to June of 2016 (*Id.* at 18).

After reviewing all of the evidence and hearing testimony, Magistrate Judge Williams issued a 28-page R&R recommending summary judgment in favor of all Defendants. The crux of the R&R was his finding that Plaintiff's testimony lacked credibility or consistency, whereas testimony from his counselor (Jason Vasquez) was credible and supported the finding that Plaintiff did not exhaust his administrative remedies (Doc. 91). The parties had 14 days to respond to the R&R. Plaintiff sought and received an extension of that deadline, timely filing objections via counsel on August 14, 2018 (Doc. 94). The specifics of his objections will be addressed individually below. Defendants responded (Doc. 98).

The R&R is now before the Court for a ruling.

## LEGAL STANDARDS

When a party timely objects to a magistrate judge's R&R, the district court—giving deference to the magistrate judge's findings of fact and credibility determinations as noted below—must undertake *de novo* review of the portions to which an objection has been made. **28 U.S.C. § 636(b)(1)(C).**

As an inmate, Plaintiff's lawsuit is governed by the PLRA, which requires a prisoner to exhaust his administrative remedies before filing suit. **42 U.S.C. § 1997e.** In Illinois, the grievance process requires a prisoner to speak with his counselor, file a written grievance, and then appeal that grievance through the institutional and state levels. **20 Ill. Admin. Code §§ 504.810–850.** Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is clear: an inmate must exhaust only those administrative remedies that are available to him, **42 U.S.C. § 1997e(a).** Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance, *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**, or, when prison employees thwart a prisoner from exhausting, *Dole*, **438 F.3d at 809.**

In *Pavey v. Conley* (*Pavey I*), the Seventh Circuit set forth the procedures for tackling the exhaustion issue. The first step is for the judge to conduct "a hearing on exhaustion and [permit] whatever discovery relating to exhaustion he deems appropriate." *Pavey I*, **544 F.3d 739, 742 (7th Cir. 2008).** Upon conducting the hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley (Pavey II)*, **663 F.3d 899, 904 (7th Cir. 2011) (affirming the factual findings of a magistrate judge, whose R&R included factual findings that plaintiff was not credible).** Thus, unlike other summary judgment motions, the very purpose of *Pavey I* is to allow a judge to resolve swearing contests between litigants on the limited issue of

exhaustion of administrative remedies. *See Pavey I*, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control."). A magistrate judge's credibility determinations are afforded great deference. *Pavey II*, 663 F.3d at 904; *see also Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) ("[D]*e novo determination* is not the same as a *de novo hearing*. The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations.") (emphasis added).

## ANALYSIS

Here, Plaintiff argues that the R&R should not be adopted for seven reasons. First, Plaintiff argues that the R&R cannot be adopted because it relied in part upon irrelevant testimony from Dilday—an individual not involved in this case. The Court finds this objection meritless because, even if Dilday's testimony was entirely irrelevant it was not the only piece of evidence that contributed to the Magistrate Judge's credibility findings. Other more credible evidence, such as testimony from Jason Vasquez, is sufficient to support the Magistrate Judge's findings without Dilday.

Second, Plaintiff contends that Vasquez's testimony lacked credibility because the alleged "rapport" between Plaintiff and Vasquez came about months after the attack, and Vasquez allegedly lied about always carrying grievance slips around with him. Plaintiff provides no evidentiary support for the assertion that Vasquez lied—so this will be disregarded. The Magistrate Judge's job at an evidentiary *Pavey* hearing is

to make credibility determinations, and there is nothing in the R&R or the objections to suggest that Magistrate Judge Williams did so improperly.  Having heard the testimony of Vasquez and Plaintiff, Magistrate Judge Williams was in the best position to assess which declarant was more believable.  He did just that by assessing the details of each individual's account of the facts, as well as surrounding circumstances.  He found that Vasquez had no motive to prevent Plaintiff from filing a grievance about the alleged June 2016 beating, and that Vasquez saw Plaintiff frequently enough to allow for a timely grievance to have been filed.  In light of these determinations, Magistrate Judge Williams determined that Vasquez provided a credible account of the situation.  By contrast, he noted inconsistencies in Plaintiff's testimony and evidence.  Additionally, the exhibit with more than a hundred pages of grievances filed by Plaintiff suggests that he had ample access to and familiarity with the grievance system.  Plaintiff does not point to any information persuading the undersigned that Magistrate Judge Williams' credibility determinations were erroneous or unsupported.  Accordingly, Plaintiff's objections about Vasquez cannot prevail.

Third, fourth, and seventh, Plaintiff alleges that there were not grievance boxes in the cell house he was in and the grievance carts were not in use during the time period when he would have grieved this beating.  These assertions fall based on the credible testimony by Vasquez that a Plaintiff can file a grievance by handing it to the counselor, as well as the finding that Plaintiff saw two counselors within 60 days of the

beating.  Plaintiff could have timely filed his grievance by handing it to a counselor on either of those occasions.

Fifth, Plaintiff alleges that Magistrate Judge Williams did not give proper credit to his testimony that he was afraid to grieve this particular beating.  This objection does not unsettle the R&R because in light of the record evidence it is insincere.  This plaintiff is a serial litigator in this District, and in federal courts across the State of Illinois.  It is simply not believable that he was afraid to file a grievance on this one occasion, but that he has not had such fear with regards to his numerous other cases.  At this time, he has at least five other active cases pending before this Court (16-cv-0334, 17-cv-1121, 17-cv-1122, 18-cv-0005, 18-cv-0006).  There are also more than a hundred pages of grievances drawn up by this individual that Defendants submitted at the evidentiary hearing (Doc. 90).  In light of the sheer volume of this evidence, the undersigned cannot find that Magistrate Judge Williams erred in determining that fear did not deter a timely grievance in this matter.  What is more, if Plaintiff was afraid of retaliation, it is hard to believe that he would have continuously complained to numerous prison staff that he needed mental or medical care in the wake of this beating.  It is also hard to understand how he would have felt safe filing a publically accessible complaint with a court whereas grievances are only seen by certain individuals at the prison level.

Finally, sixth, Plaintiff alleges that Magistrate Judge Williams erred by finding that he had submitted other grievances during the timeframe from February of 2016 to

June of 2016. Regardless of the accuracy of Magistrate Judge Williams' finding on this particular issue, the R&R can stand because grievances that pre-date the June 10, 2016 conduct are of little relevance to this case. Significantly, the grievances introduced at the evidentiary hearing show that in 2017 Plaintiff continued to file grievances seeking medical care and other things. The use of the grievance procedure that post-dates the alleged June 2016 beating is important because it shows that Plaintiff still knew how to file grievances and he was not being entirely precluded from doing so. In light of that fact, the undersigned finds that Plaintiff had adequate access to the grievance process to exhaust or attempt to exhaust the grievance procedure. Worst case scenario is that Plaintiff was precluded from filing a timely grievance about the beating, and that he had to file an untimely one at a later date. However, that scenario was not true because the undersigned finds it credible that Plaintiff could have submitted timely grievances by hand when counselors visited him.

## Conclusion

For the foregoing reasons, the R&R submitted by Magistrate Judge Stephen C. Williams (**Doc. 91**) is **ADOPTED** in full. The summary judgment motions filed by all Defendants (**Docs. 63 and 65**) are **GRANTED.** Plaintiff's claims against SPILLER #7356, WILLIAM SPILLER, SHAUN GEE, M. HUDSON, F. EOVALADI, R. ALLEN, B. GUTREUTER, A. LANG, CORY BUMP, C. FREIDRICH, HARTMAN, NURSE L. GREGSON, J. CARTER, K. BROOKMAN, SARAH WOOLEY, R. ENGELAGE, and MR.

WARD are **DISMISSED** with prejudice, and the Clerk is **DIRECTED** to terminate them from the docket.  In light of this disposition, there are no parties or claims remaining in this case.

**IT IS SO ORDERED.**

**DATE:** September 10, 2018

 *s/ Michael J. Reagan*  
**MICHAEL J. REAGAN**  
United States District Judge